1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES F. CHERPES,

     Plaintiff,

  v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

     Defendant.

CASE NO. 15-cv-05891 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

   This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 3; Consent to Proceed Before a United States Magistrate Judge, Dkt. 4). This matter has been fully briefed (*see* Dkt. 11, 15, 18).

   After considering and reviewing the record, the Court concludes that the Administrative Law Judge's ("ALJ") written decision is supported by substantial evidence in the record as a whole. The Court concludes that the ALJ properly assessed

the medical opinion evidence and plaintiff's allegations of disabling limitations. Thus, the Commissioner's decision is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff, JAMES F. CHERPES, was born in 1963 and was 45 years old on the alleged date of disability onset of June 5, 2009 (*see* AR. 160-61). Plaintiff completed high school and has an HVAC certification (AR. 40-41). Plaintiff has work experience in heating and air conditioning (AR. 184-88). Plaintiff left his last employment when his doctor put him on light duty and his employer did not have light duty (AR. 41).

According to the ALJ, through the date last insured, plaintiff has at least the severe impairments of "cervical stenosis, status-post fusion and anterior cervical discestomy and fusion (ACDF) with hardware removal; and bilateral shoulder degenerative joint disease (AR. 14).

At the time of the hearing, plaintiff was living in a modular home with his wife and 18-year-old daughter (AR. 37).

PROCEDURAL HISTORY

Plaintiff's application for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act was denied initially and following reconsideration (*see* AR. 65-68, 99-100). Plaintiff's requested hearing was held before Administrative Law Judge Joanne E. Dantonio ("the ALJ") on January 13, 2014 (*see* AR. 32-64). On July 22, 2014, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 9-31).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether the ALJ properly evaluated the medical evidence; (2) Whether the ALJ properly evaluated plaintiff's testimony; and (3) Whether the ALJ properly assessed plaintiff's residual functional capacity and erred by basing her step five finding on an erroneous residual functional capacity assessment (*see* Dkt. 11, p. 2).

<u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

<u>DISCUSSION</u>

**(1)     Whether the ALJ properly weighed the medical evidence.**

Plaintiff argues that the ALJ erred in his treatment of the medical opinion evidence. The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). But when a treating or examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can

accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The ALJ may not reject a brief, conclusory opinion from a treating physician if the opinion is consistent with the claimant's testimony and with the doctor's treatment notes. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014).

   A. *Plaintiff's Summary of the ALJ's Treatment of the Medical Opinion Evidence*

Plaintiff devotes eleven pages of his brief to restate much of the medical evidence and then asks to the Court to "hold that the ALJ erred by failing to properly evaluate all of the medical evidence …. [and] [t]he ALJ also erred by failing to acknowledge that [plaintiff's] medical evidence, considered in its entirety, fully supports his testimony about his limitations" (Dkt. 11, pp. 3-13). When reading plaintiff's brief, "one wonders if [plaintiff], in [his] own version of the 'spaghetti approach,' has heaved the entire contents of a pot against the wall in hopes that something would stick …. As the Seventh Circuit observed in its now familiar maxim, "[j]udges are not like pigs, hunting for truffles buried in briefs." *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

The Ninth Circuit has "repeatedly admonished that we cannot 'manufacture arguments for an appellant' and therefore we will not consider any claims that were not actually argued in appellant's opening brief." *Indep. Towers of Washington*, 350 F.3d at 929-30 (quoting *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)). The Court may only review "issues which are argued specifically and distinctly in a

party's opening brief." *Id.* "A bare assertion of an issue does not preserve a claim." *Indep. Towers of Washington*, 350 F.3d at 929-30 (quoting *D.A.R.E. America v. Rolling Stone Magazine*, 270 F.3d 793, 793 (9th Cir. 2001)). Thus, this Court declines the invitation to seek out gremlins of potential arguments and assertions of legal error presented in plaintiff's opening brief and instead must rely on the arguments clearly presented, not the arguments that may lay somewhere among the weeds. *See Indep. Towers of Washington*, 350 F.3d at 929-30; *Carmickle*, 533 F.3d at 1161 n.2.

After review of plaintiff's brief, the Court concludes that plaintiff has sufficiently raised challenges to the ALJ's treatment of the medical opinions of: Colleen Landino, D.O., Michael Santoro, M.D., Roy Brown, M.D., Richard Kaspar, Ph.D., Craig T. Arntz, M.D., and Jonathan Kurland, M.D. (*see* Dkt. 11, pp. 3-13).

**B.  Colleen Landino, D.O.**

Dr. Landino completed a Department of Labor and Industries Claim Form, signed on February 8, 2011, with the date of evaluation listed as January 27, 2011 (AR. 475). She observed that plaintiff suffers from "electrocution-induced neuropathy which exacerbate[ed] an overuse shoulder pain cycle as a result of repetitive, regular, [greater than one] year of heavy lifting—causing damage to [bilateral] shoulders" (AR. 475). Dr. Landino opined that plaintiff's prognosis was poor "for return to work at the job of injury at any date" (AR. 47). Dr. Landino also opined that plaintiff could never work above the shoulders or use a forceful grasp, had postural limitations, and could seldom use the keyboard, use his wrists, or perform fine manipulation (AR. 475).

The ALJ assigned little weight to Dr. Landino's opinion, noting there "is no basis given for the manipulative, fingering, and postural limitations" (AR. 22). The ALJ also noted that the records before Dr. Landino's evaluation and after are inconsistent with her findings (AR. 22).

As an initial matter, plaintiff quibbles with the ALJ's notation that Dr. Landino is "a treating source with an illegible signature" and notes that the ALJ "incorrectly stated that this assessment was completed in February 2011" (Dkt. 11, p. 4). However, as noted above Dr. Landino signed the form on February 8, 2011, and listed the date of evaluation as January 27, 2011 (*see* AR. 475). Thus, the ALJ was not incorrect when he referred to the February 2011 opinion of Dr. Landino. Moreover, the Court agrees that Dr. Landino's signature is illegible, and plaintiff does not argue that the ALJ committed reversible error by finding Dr. Landino's signature illegible. Indeed, the Court can only surmise that that is Dr. Landino's signature because the healthcare provider's name is listed at the top of the signed form (*see* AR. 475). At any rate, plaintiff has not established error on either of these bases.

Next, plaintiff argues that "[t]he ALJ is incorrect" with respect to her findings regarding Dr. Landino's opinion and "Dr. Landino's opinion is supported by her clinical findings as well as the findings and opinions of all of [plaintiff's] other treating physicians" (Dkt. 11, p. 8). An ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the ALJ gave little weight to Dr. Landino's opinions regarding the manipulative, fingering, and postural limitations because Dr. Landino provided no support for her opinion (AR. 22). Plaintiff does not cite to any treatment notes, nor has the Court found any, to support Dr. Landino's February 2011 opinion. Although medical records from Dr. Landino are present in the record (*see*, *e.g.*, AR 262-80), the Court has not found any medical records supporting Dr. Landino's February 2011 opinion. Indeed, Dr. Landino completed other Department of Labor and Industry Claim forms that also appear to be devoid of additional medical records to support her findings (*see*, *e.g.*, AR. 736-37, 740). According, the ALJ did not err in rejecting Dr. Landino's medical opinion by finding it unsupported by the medical record and her clinical findings. *Batson*, 359 F.3d at 1195. Moreover, in light of the lack of clinical support, the ALJ appropriately cited to conflicting medical evidence that undermined Dr. Landino's opinion regarding plaintiff's manipulative, fingering, and postural limitations (*see* AR. 22). Thus, the ALJ provided specific and legitimate reasons supported by substantial evidence to discount this portion of Dr. Landino's medical opinion.

C.  *Michael A. Santoro, M.D.*

Dr. Santoro completed a Department of Labor and Industries form on March 25, 2011 (AR. 493). Dr. Santoro observed that plaintiff had limited motion in both shoulders, periscapular atrophy in his left shoulder, and recent operative findings in his left shoulder (AR. 493). He also opined that plaintiff could return to work on modified duty from March 25, 2011 through April 25, 2011 (AR. 493). In the treatment notes underlying the

form Dr. Santoro completed, Dr. Santoro observed "due to the effects of the preexisting problems in concert with the chronic shoulder tenosynovitis, there is likely to be an ongoing degree of chronic neck and should pain that will not be able to be remedied" (AR. 499).

The ALJ adopted Dr. Santoro's medical opinion (AR. 23), noting it was supported by Dr. Santoro's medical exam, subsequent medical exams by Dr. Santoro, and the overall record (AR. 23). Plaintiff argues that the ALJ improperly adopted Dr. Santoro's March 2011 opinion and erred by failing to fully consider Dr. Santoro's notes in the concurrent office visit where Dr. Santoro "clarified the complicated nature of [plaintiff's] combination of impairments and suggested L&I add [plaintiff's] right shoulder to his claim …" (Dkt. 11, p. 4-5).

Plaintiff's argument as to Dr. Santoro's March 2011 opinion is not fully developed. On the one hand, plaintiff argues the ALJ should not have relied upon Dr. Santoro's opinion. On the other hand, plaintiff argues the ALJ failed to acknowledge a notation in a treatment record underlying Dr. Santoro's medical opinion. *See id.* Regardless, in interpreting the evidence and developing the record, the ALJ does not need to "discuss every piece of evidence." *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir.1998); *see also Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). Indeed, an ALJ need not discuss evidence that is neither significant nor probative. *See Howard ex rel. Wolff v. Barnhart,* 341 F.3d 1006, 1012 (9th Cir.2003); *Vincent*, 739 F.2d at 1395. A doctor's opinion devoid of any opined limitations is not significant or probative. *See*, *e.g.*, *Hughes v. Colvin*, No. C13-0143-MAT, 2013 WL 11319016, at *3 (W.D. Wash. Aug. 14,

2013), *aff'd*, 599 F. App'x 765 (9th Cir. 2015) (citing *Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (explaining that where a doctor's opinion does not assign any specific limitations, an ALJ need not provide reasons for rejecting the opinion because none of the conclusions were actually rejected)). Here, Dr. Santoro's opinion that plaintiff's case is confounded by a number of impairments is not an opinion regarding a specific limitation. Thus, the ALJ did not err in failing to discuss the notation in Dr. Santoro's medical opinion. *See id.*

Moreover, to the extent plaintiff is arguing that the ALJ erred by relying upon Dr. Santoro's opinion to determine plaintiff is not disabled, the Court is not persuaded. To be found disabled, plaintiff must establish that she is unable to "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Not only must the impairment itself last or be expected to last for 12 months, but those work-related limitations stemming therefrom alleged to be disabling also must last for the requisite time period. *See Barnhart v. Walton*, 535 U.S. 212, 217-222 (2002) (upholding defendant's interpretation of Social Security Act's definition of "disability" as requiring that both medically determinable impairment *and* resulting inability to engage in substantial gainful activity must last for "not less than 12 months"); *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (upholding decision by ALJ to give physician's opinion regarding inability to tolerate sedentary or light work "little weight" in assessing claimant's "long-

term functioning" in light of that physician's decision two months later to release claimant to full-time work). The *claimant* bears the burden of proving he or she suffers from a medically determinable impairment that can be expected to last for continuous period of not less than twelve months. *Tackett*, 180 F.3d at 1098. Here, the ALJ did not err in relying upon a medical opinion demonstrating that plaintiff was not disabled for the requisite twelve month period, and plaintiff has not established any error on the ALJ's part.

   D.  *Roy Brown, M.D.*

Dr. Brown, a State agency non-examining consultant, evaluated plaintiff's medical records and offered a medical opinion on June 28, 2011 (AR. 80-83). Dr. Brown opined that plaintiff could work with certain exertional limitations, including lifting or carrying 20 pounds occasionally and 10 pounds frequently;  sitting, standing, or walking six hours in an eight-hour workday; and performing limited push/pull with his upper extremities (AR. 80-83). Dr. Brown also opined that plaintiff is limited in his ability to lift overhead (AR. 82).

The ALJ gave Dr. Brown's medical opinion "significant weight" finding it supported by the record (AR. 24-25). However, the ALJ noted that Dr. Brown's push/pull limitation was not supported by the record, including Dr. Santoro's medical opinion (AR. 25).

Plaintiff asserts that the ALJ erred by "failing to provide specific citations to the record in support of his reliance on the opinion" of Dr. Brown and argues that the ALJ

"fails to acknowledge that the opinion of a non-examining physician is entitled to less weight than the opinions of treating and examining physicians" (Dkt. 11, p. 5).

Granted, the opinion of an examining physician is "entitled to greater weight than [that] of a nonexamining physician." *Tonapetyan*, 242 F.3d at 1149. However, a non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Lester*, 81 F.3d at 830-31; *Tonapetyan*, 242 F.3d at 1149. Here, the ALJ determined that Dr. Brown's opinion was generally consistent with the evidence in the record—except the push/pull limitation (AR. 25). As noted by the ALJ, when formulating his opinion, Dr. Brown reviewed medical records, including MRI results from March 14, 2005, which "revealed Stenosis at C5-C6" (AR. 83). Dr. Brown relied upon the MRI results to determine that plaintiff had limited overhead reaching abilities (AR. 82). In addition, treating and examining providers opined that plaintiff had normal gait, normal tone and muscle strength, and painless range of motion (*see* AR. 286, 394, 483), which the ALJ determined is consistent with the ability to engage in light work consistent with the RFC (AR. 18-19). These observations are also consistent with Dr. Brown's opinion that plaintiff had no limitations with respect to sitting, standing, or walking six hours in an eight-hour day (*see* AR. 80-83). In addition, Dr. Brown's opinion is consistent with examining physician Michael Santoro's opinion that plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally (*see* AR. 499). In short, the Court finds that Dr. Brown's opinion is supported by other independent evidence in the record, and thus the ALJ did not err in

relying upon the portion of Dr. Brown's opinion consistent with that independent

evidence.

Moreover, the ALJ determined that Dr. Brown's opinion was generally consistent with the evidence of record, *except* the push/pull limitation, which was inconsistent with the examining physician's opinion (AR. 25). With respect to the push/pull limitation, given the inconsistency in the opinions, the ALJ relied upon an examining physician's opinion over Dr. Brown's nonexamining opinion. Accordingly, the ALJ did not err in relying upon Dr. Brown's opinion when she relied upon that portion of the opinion which was supported by the evidence, but rejected a portion of Dr. Brown's opinion in favor of an examining physician's contradictory opinion.

*E.  Richard Kaspar, Ph.D.*

Dr. Kaspar, a State agency psychologist, evaluated plaintiff's medical records and offered a medical opinion on July 5, 2011 (AR. 79-85). In his opinion, Dr. Kaspar opined, among other limitations, that plaintiff is limited to "superficial contact with the public" (AR. 85). The ALJ rejected Dr. Kaspar's medical opinion because it relied upon a 2005 examination, which the ALJ determined is remote and inconsistent with more recent medical records during the relevant period of disability (AR. 15-16).

Plaintiff assigns error to the ALJ's treatment of Dr. Kaspar's medical opinion, arguing Dr. Kaspar's opinion was "consistent with [plaintiff's] testimony, and the ALJ did not state any convincing reason for rejecting any of [plaintiff's] testimony" (Dkt. 11, p. 5). However, "[m]edical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle*, 533 F.3d at 1165. Indeed, courts have affirmed an ALJ's

rejection of a medical opinion predating the alleged onset of disability, including

psychological opinions that a claimant has greater functional mental limitations. *See*

*Gunderson*, 371 F. App'x at 809 (citing *Carmickle* and finding the ALJ did not err when

discounting the medical opinion of a doctor who conducted a psychological exam "nearly

two years before the alleged onset date of [Plaintiff's] disabilities"); *Fountaine v. Colvin*,

No. 3:14-CV-05035-KLS, 2014 WL 4436989, at *5 (W.D. Wash. Sept. 8, 2014)

(affirming ALJ's rejection of psychological opinions offered three years before alleged

onset date); *Wa Wei Chong v. Colvin*, No. CV 13-0226-DTB, 2014 WL 1407934, at *3

(C.D. Cal. Apr. 11, 2014) (finding medical opinion with more restrictive mental

functional limitations was of limited probative value because it was offered over two

years prior to the alleged onset date). Thus, the ALJ did not err by rejecting Dr. Kaspar's

because it relied upon a 2005 medical opinion that predated the alleged onset of disability

of June 5, 2009 by nearly four years.

   F.  *Craig T. Arntz, M.D.*

   Dr. Arntz treated plaintiff for his shoulder impairment and performed surgery in

August 2009 (AR. 417, 582-83). Dr. Arntz opined that from June 2009 through July 2009

that plaintiff had no use of his left arm and that during recovery he could not climb a

ladder, crawl, reach with his left arm, work above his shoulders, use his left wrist, or

grasp on the left (AR. 417). Dr. Arntz opined that these restrictions were temporary (AR.

417).

   The ALJ did not discuss Dr. Arntz's medical opinion. Plaintiff maintains that the

ALJ erred by failing to discuss or assign any weight to the medical opinion of Dr. Arntz

(Dkt. 11, p. 7). However, as noted above, an ALJ need only discuss probative evidence. *Vincent*, 739 F.2d at 1395. Here, the ALJ did not err in failing to discuss Dr. Arntz's opinion because Dr. Arntz did not identify any impairment that satisfies the durational requirement-*i.e.*, a disabling impairment expected to last for at least 12 months. *See* 42 U.S.C. § 423(d)(1)(A); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). As such, Dr. Antraz's opinion was not significant probative evidence that the ALJ was required to consider. *See Woeppel v. Colvin*, No. 12-CV-06001 RBL, 2014 WL 868808, at *9 (W.D. Wash. Mar. 5, 2014).

   *G.  Jonathan Kurland, M.D.*

   Dr. Kurland evaluated plaintiff on March 9, 2011 (AR. 480-84). With respect to plaintiff's left shoulder, Dr. Kurland opined that plaintiff has "very mild atrophy above the scapular spine in the trapezial region on the left compared to the right" (AR. 482). With respect to range of motion, Dr. Kurland noted that "[p]assively I can get him to full range of motion of the left and right shoulders" (AR. 483). Dr. Kurland recommended that plaintiff "refrain from repetitive use of the left arm at or above shoulder level, consisting of limited lifting, reaching, pushing, and pulling" (AR. 483).

   The ALJ gave Dr. Kurland's opinion significant weight "because they are generally consistent with the overall record" (AR. 23). Although the ALJ noted that that Dr. Kurland "failed to describe the claimant's actual abilities," the ALJ determined that Dr. Kurland's finding that plaintiff had 5/5 strength "suggests that the claimant retained sufficient strength for lifting, pushing, and pulling at the light exertional level" (AR. 23).

1    Plaintiff argues that the ALJ erred by giving significant weight to Dr. Kurland's

2  medical opinion, but failing to include in the RFC Dr. Kurland's medical opinion that

3  plaintiff "could not repetitively use his left arm *at or above* shoulder height for lifting,

4  reaching, pushing, or pulling" (Dkt. 11, p. 9 (emphasis in original)). In the RFC, the ALJ

5  included a limitation that plaintiff could perform "no over the shoulder reaching" (AR.

6  16). Plaintiff appears to suggest that although the ALJ included limitations for over the

7  shoulder reaching, the ALJ nevertheless erred because she did not include any limitations

8  with respect to plaintiff's ability to lift *at* shoulder level, nor did she include any

9  limitations regarding plaintiff's ability to push and pull at or above shoulder level (*see*

10  *id.*).

11

12    The Court finds that the ALJ did discuss Dr. Kurland's opinion regarding

13  plaintiff's ability to reach, push, and pull at or above shoulder level (AR. 23). Indeed, the

14  ALJ noted that although Dr. Kurland "failed to describe the claimant's actual abilities …

15  the 5/5 strength noted by Dr. Kurland at the time of the March 2011 opinion suggests that

16  the claimant retained sufficient strength for lifting, pushing, and pulling at the light

17  exertional level" (AR. 23). Thus, not only did the ALJ consider Dr. Kurland's opinion

18  regarding plaintiff's ability to push, pull, and reach at or above shoulder level, the ALJ

19  determined that the RFC was consistent with Dr. Kurland's opinion.

20

21    Moreover, even if the ALJ erred by failing to fully incorporate the language from

22  Dr. Kurland's medical opinion into the RFC, the Court finds that any error was harmless.

23  *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2011) (holding that "harmless error

24  principles apply in the Social Security Act context") (citing *Stout v. Comm'r, Soc. Sec.*

*Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). First, the ALJ repeatedly discussed plaintiff's range of motion and noted that it was consistent with the ability to perform light exertional work. For example, in discussing Dr. Santoro's opinion, the ALJ noted that '[t]hese range of motion findings indicate that the claimant could not have performed over the shoulder reaching, and the above residual functional capacity accommodates him appropriately" (AR. 20). Similarly, the ALJ noted that Dr. Hestrom Lara observed "painless range of motion of all major muscle groups and joints" (AR. 22). Second, the ALJ correctly noted that Dr. Kurland did not describe plaintiff's actual abilities. Indeed, even Dr. Kurland's opinion regarding plaintiff's ability to push, pull, and lift at or above shoulder level is not a permanent limitation. Rather, it is a recommendation that plaintiff refrain from *repetitive* use of the left arm at or above shoulder level (*see* AR. 483 (emphasis added). Dr. Kurland does not list plaintiff's abilities with respect to his left shoulder, nor does he say that plaintiff is completely impaired in the ability to use his left shoulder, just that he should refrain from using his shoulder repetitively (*see* AR. 483).

Finally, any error in failing to include the word "at" in the RFC—or in failing to use the exact language from Dr. Kurland's opinion—is harmless because it would not have changed the ultimate disability determination. Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability

determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing *Stout*, 454 F.3d at 1055-56). Here, the ALJ *did* fully credit Dr. Kurland's medical opinion and still determined plaintiff to be not disabled. For all of these reasons, the ALJ did not err in her treatment of Dr. Kurland's medical opinion, and any failure to include specific language in the RFC was harmless.

### (2)    Whether the ALJ properly evaluated plaintiff's testimony.

Plaintiff also maintains that the ALJ failed to properly evaluate his allegations of disabling pain and testimony (Dkt. 11, pp. 13-18). To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints."[1] *Id.*; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen*, 80 F.3d at 1284. The ALJ may also consider if a claimant's complaints are "inconsistent with clinical observations[.]" *Regennitter v. Commissioner of Social*

---

[1] On March 16, 2016, Social Security Ruling ("SSR") 16-3p—Evaluation of Symptoms in Disability Claims—became effective, eliminating the term "credibility" from the Social Security Administration's policy, and clarifying "adjudicators will not assess an individual's overall character or truthfulness." *See* SSR 16-3p, 2016 WL 1119029, at *1, 10 (S.S.A. Mar. 16, 2016). The ALJ's July 2014 decision came nearly two years before SSR 16-3p. Thus, she could not have employed the new SSR and the Court evaluates her decision based upon the law existing at the time of her decision.

*Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). Questions of credibility are solely within the control of the ALJ. *Sample*, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where the determination is based on contradictory or ambiguous evidence. *Id.* at 579.

In this case, the ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms to be not entirely credible (AR. 17). The Court finds that the ALJ provided specific, cogent reasons supported by clear and convincing evidence for disbelieving plaintiff's testimony and statements regarding the severity of his symptoms. *See Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001); *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

First, plaintiff argues that because the ALJ erred in evaluating the medical evidence, she also erred in evaluating plaintiff's credibility (Dkt. 11, p. 14). The ALJ noted that "the overall record indicates that [plaintiff] was not as limited as alleged" (AR. 17). However, the Court has already found that plaintiff has failed to establish that the ALJ erred in his treatment of the medical evidence. *See* Section 1, *supra.* Thus, plaintiff has not established that the ALJ erred on this basis in evaluating plaintiff's credibility.

Second, plaintiff argues that the ALJ erred by rejecting his testimony because he returned to work following a surgery in 2005 (Dkt. 11, p. 14). The ALJ observed that plaintiff continued to work following surgery in 2005 and being electrocuted in 2008" (AR. 17). The Court agrees that to the extent the ALJ relied upon evidence that predates

the alleged onset of disability to discount plaintiff's testimony and statements, the ALJ

erred. *Carmickle*, 533 F.3d at 1165.

Third, plaintiff maintains that the ALJ also erred in relying upon objective

imaging and tests to discount plaintiff's testimony (*see* Dkt. 11, pp. 14-15). The ALJ

determined that objective testing undermined plaintiff's allegations because imaging

"revealed mild to moderate degenerative changes, which have improved with surgery and

physical therapy" (AR. 17-19). Evidence of improvement is a clear and convincing

reason to discount a plaintiff's testimony and statements. *See*, *e.g.*, *Tommasetti v. Astrue*,

533 F.3d 1035, 1040 (9th Cir. 2008) (noting that evidence that plaintiff's impairment

improved with medication was a proper reason to discount the plaintiff's testimony).

Here, the ALJ noted that medical records and imaging "demonstrated significant

improvement" (AR. 18, 19). For example, the ALJ relied upon Dr. Hedstrom Lara's

medical records noting that plaintiff "is doing well overall" and that she was "pleased

with [plaintiff's] postoperative progress" (AR. 19). Similarly, the ALJ appropriately

discounted plaintiff's testimony after determining that objective imaging demonstrated

plaintiff improved following surgery and physical therapy (*see* AR. 17-19). Thus, as an

ALJ may discount credibility based upon evidence of medical improvement, the ALJ did

not err in discounting plaintiff's credibility on this basis.

Fourth, plaintiff maintains that the ALJ improperly determined that plaintiff gave

"poor effort" in testing (Dkt. 11, p. 15). An ALJ properly considers a claimant's failure

"to give maximum or consistent effort" on examination in assessing credibility. *Thomas*

*v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (claimants "efforts to impede accurate

testing of her limitations supports the ALJ's determinations as to her lack of credibility."). Here, the ALJ determined that the medical evidence indicated "that the claimant did not provide full effort" (AR. 18, 21). The ALJ cited to medical records indicating "diffuse giveway" and strength that was "difficult to judge" due to give way during testing (AR. 18 citing AR. 395, 414). The ALJ also noted that in the same month, different doctors observed "vastly different cervical range of motion findings as well as similar give-way during strength testing" (AR. 18). Indeed, one examining physician noted that "motor strength was difficult to judge" due to giveway during testing (AR. 414). Evidence of give-way during testing may be evidence of malingering or evidence of poor effort. *See*, *e.g.*, *Aguinaga v. Astrue*, No. 4:12-CV-00445-REB, 2014 WL 28822, at *9 n.5 (D. Idaho Jan. 2, 2014); *Macy v. Astrue*, No. 4:10-CV-1901 CEJ, 2012 WL 124551, at *9 (E.D. Mo. Jan. 17, 2012) ("Malingering and other functional weakness is often characterized by give-way weakness, in which normal strength of effort suddenly gives way.") (citing *Merck Manual of Diagnosis and Therapy* 1602 (19th ed.2011)). Thus, the ALJ did not err in evaluating the medical evidence and relying upon it to determine that plaintiff demonstrated poor effort, and thus in discounting plaintiff's testimony on this basis.

Fifth, plaintiff asserts that the ALJ improperly determined that there were "inconsistencies" between the medical records and plaintiff's symptom testimony (Dkt. 11, p. 16). An ALJ provides a clear and convincing reason for discounting plaintiff's testimony if the plaintiff's complaints are "inconsistent with clinical observations." *Regennitter*, 166 F.3d at 1297; *see also Fisher v. Astrue*, 429 F. App'x 649, 651 (9th Cir.

2011). Here, the ALJ determined that plaintiff's "medical evidence demonstrates that he was not as limited as alleged and capable of performing light work" with the restrictions listed in the RFC (AR. 20). The ALJ summarized plaintiff's testimony at the hearing and then proceeded to outline numerous examples of how plaintiff's medical records undermine his testimony (*see* Ar. 17-20). For example, the ALJ noted that plaintiff "testified that he cannot perform activities that require grasping or picking up over five pounds" but plaintiff testified that he drove to the hearing, a task that necessarily requires gripping (*see* AR. 20). The ALJ also noted that plaintiff reported playing drums and guitar at a doctor's appointment, which also undermines his statements regarding gripping capabilities (*see* AR. 20). Although plaintiff argues that evidence of playing music is not evidence that plaintiff can work at the light exertional level (*see* Dkt. 17, p. 17), the Court finds that the ALJ relied upon evidence of plaintiff's musical hobby as evidence undermining plaintiff's allegations of debilitating limitations, not to find that plaintiff could perform light work. Thus, the Court finds that the ALJ properly rejected plaintiff's allegations as inconsistent with the medical records.

Sixth, plaintiff maintains the ALJ improperly found that plaintiff stopped working due to lack of work rather than due to his impairments. Dkt. 11, p. 18. The ALJ determined that "[d]espite the claimant's alleged difficulties, he admitted that he continued working until being restricted to light work. Thus, the claimant's loss of work appears to be caused by lack of work at his last employer rather than physical inability to perform light work activity" (AR. 21). The fact that a claimant stops working because he was laid off rather than due to his injuries is a sufficient reason for disregarding his

testimony. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (as amended); *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) (claimant was not credible, in part because she did not lose her jobs because of her pain). At the hearing, plaintiff testified that he stopped working because "[t]here was no light duty" (AR. 41). Thus, plaintiff's testimony about the reason he stopped working was also a clear and convincing reason for the ALJ to discount plaintiff's credibility.

If the overall credibility finding is supported by substantial evidence in the record, the ALJ's determination is not invalid simply because one reason for discounting plaintiff's credibility was improper. *See Tonapetyan*, 242 F.3d at 1148. The ALJ gave five valid reasons for finding plaintiff lacked credibility (*see* AR. 19-20). Accordingly, the ALJ's overall credibility decision is supported by substantial evidence in the record.

**(3)  Whether the ALJ erred in evaluating the other medical source opinions.**

Pursuant to the relevant federal regulations, medical opinions from "other medical sources," such as nurse practitioners, therapists and chiropractors, must be considered. *See* 20 C.F.R. § 404.1513 (d); *see also Turner*, 613 F.3d at 1223-24 (citing 20 C.F.R. § 404.1513(a), (d)); SSR 06-3p, 2006 WL 2329939. "Other medical source" testimony "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Turner*, 613 F.3d at 1224. "Further, the reasons 'germane to each witness' must be specific." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

Nearly two years after the date last insured and the relevant period of disability, Mr. North opined that plaintiff was permanently precluded from returning to work to his "job of injury and work history/transferable skills jobs" (AR. 981-87). Plaintiff states that the ALJ did not address the opinion of DT North, an occupational therapist (*see* Dkt. 11, pp. 12-13). Plaintiff does not assign any specific error to the ALJ's failure to discuss Mr. North's opinion, other than summarizing Mr. North's treatment notes and noting that the ALJ did not discuss the opinions (*see id.*). As noted above, the Court will not manufacture arguments for plaintiff. *See Indep. Towers of Washington*, 350 F.3d at 929-30. Nevertheless, to the extent that plaintiff's summary and statement can be construed as assigning error to the ALJ's failure to discuss Mr. North's treatment notes, the Court finds that any error was harmless.

Evidence that postdates the date last insured is relevant to a claimant's condition prior to the date last insured. However, as in the Ninth Circuit's decision in *Turner*, Mr. North's opinion here is only marginally relevant given that it was offered nearly two years after the date last insured. *See Dale v. Colvin*, 823 F.3d 941, 944 (9th Cir. 2016) (citing *Turner*, 613 F.3d at 1224 and noting that "the source [in *Turner*] did not give an opinion about the claimant's condition until two years after the date last insured—making the opinion only marginally relevant—and the source's entire testimony differed from the opinion of all the doctors").

However, even if the ALJ erred in failing to discuss Mr. North's opinion, the ALJ did consider other examining and reviewing physicians' contradictory opinions that plaintiff could perform work at the light exertional level (*see* AR. 16-25 citing and

1   discussing AR. 80-83, 496-500, 679, 833, 845, 867, 879, 939, 972, 1039) . Thus, because

2   the ALJ considered contradictory opinions in the record and the ALJ already considered

3   the limitations opined by Mr. North, any error by the ALJ in failing to discuss Mr.

4   North's opinion was harmless as the Court concludes the ultimate disability

5   determination would not have changed. *See Molina v. Astrue*, 674 F.3d  at 1115-16.

6
      **(4)     Whether the ALJ erred in formulating the RFC, and thus erred at
7               steps four and five.**

8       Finally, based on the foregoing assignments of error, plaintiff argues that the ALJ

9   erred in formulating the RFC and thus erred at steps four and five (Dkt. 11, pp. 17-18).

10   Plaintiff's additional arguments are premised entirely on his other arguments alleging the

11   ALJ erred in finding him not disabled (*see id.*). As the Court has already determined that

12   the ALJ did nor err, or that any error was harmless, the Court finds the ALJ also did not

13   err in formulating the RFC and at steps four and five.

14
                                    CONCLUSION
15
        Based on the foregoing discussion, the Court finds the ALJ properly determined
16
    plaintiff to be not disabled. Defendant's decision to deny benefits therefore is
17
    **AFFIRMED**.
18
        Dated this 13th day of December, 2016.
19

20

21                                           J. Richard Creatura
                                             United States Magistrate Judge
22

23

24